**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE: SEMPRIS MEMBERSHIP
PROGRAM MARKETING AND SALES
PRACTICE LITIGATION

MDL Docket No. 2509

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT SEMPRIS, LLC'S
MOTION FOR TRANSFER PURSUANT TO 28 U.S.C. § 1407**

## I.    INTRODUCTION

Centralization and transfer should be denied here. Though each of the four Pending Cases[1] that Defendant Sempris, LLC ("Defendant" or "Sempris") asks to be consolidated challenges its fraudulent enrollment of consumers into valueless, recurring-fee "Membership Programs," transfer would significantly inconvenience every other party, overburden an already busy transferee court, and delay the resolution of the Pending Cases. Moreover, the cases involve different programs and representations and three of the four matters—*Daniell*, *Herman*, and *Kist*—have been pending for nearly a year with discovery ongoing for the past six months.[2] Plaintiffs and Sempris, which are represented by the same lawyers in each case, have already agreed to a cross-use agreement and a joint protective order, and alternatives to transfer plainly exist such that formal consolidation is unnecessary.

---

[1]    The four pending class actions are: *Herman v. Sempris, et al.*, Case No. 13-CV-00020 (W.D. Mich. Jan. 7, 2013); *Maher v. Sempris, et al.*, Case No. 13-CV-02202 (D. Minn. Aug. 14, 2013); *Daniell v. Sempris, et al.*, Case No. 13-CV-6938 (N.D. Ill. Sept. 26, 2013); *Kist v. Sempris, et. al.*, Case No. 13-CV-10262 (D. Mass. Feb. 11, 2013) (the "Pending Cases"). The *Daniell* case was filed in Illinois state court in December 2012, and was later removed to the Northern District of Illinois following the addition of co-defendant Quality Resources. *See Daniell v. Sempris, et. al*, Case No. 2012 CH 44123 (Cir. Ct. Cook Cnty, Dec. 13, 2012.)

[2]    Discovery has now been stayed in *Herman* and *Daniell* pending resolution of Sempris's petition for transfer. Sempris's motion to stay remains pending before the court in *Kist*.

Sempris insists that transfer is nevertheless appropriate due to allegedly common issues of fact and a supposed risk of inconsistent class rulings, but such concerns are exaggerated. The Pending Cases do not share complex and common questions of fact—although the cases implicate Sempris's enrollment practices (and certain common questions of fact will necessarily arise), the cases involve separate Membership Programs perpetrated in conjunction with different co-defendants, different representations, and different enrollment methods. As such, the complex issues of material fact concerning whether Defendants' representations were deceptive will differ according to each respective case and require separate discovery and investigation.

Ultimately, Sempris's true intentions are exposed in its requested forum—the Central District of California—an overburdened district located thousands of miles away from nearly every litigant, and where none of the cases for which transfer is sought is currently pending. Sempris requests that venue for a single, self-serving reason: to get the matter back before Judge Otero, a district court judge who previously rendered a class certification ruling favorable to Sempris in a prior case.[3] Apart from that, Sempris fails to explain how transfer to the Central District of California would serve the convenience of the parties or promote judicial economy, or why Sempris and Plaintiffs (who share identical counsel in each of the cases) would be unable to cooperate so as to reduce supposed potential inefficiencies.

---

[3]    In *Dioquino v. Sempris*, Dioquino sought to certify a nationwide class of consumers who had been enrolled in any Sempris membership program but had never attempted to utilize membership services. *See Dioquino*, Case No. 11-CV-05556 (C.D. Cal. April 9, 2012), Dkt. 70. In denying certification, Judge Otero found that the resolution of certain factual issues, including the specific enrollment methods and scripts used, would require individualized inquiry because, in part, Sempris used different methods and representations across its various Membership Programs and marketing partners. *Id*. at 7-9. The Pending Cases were thus specifically filed to separate out the litigation into smaller classes where the enrollment method and representations were uniform within each discrete subgroup. (*See* Section II.B, *infra*.) Transfer of the cases back to the *Dioquino* court would thus run contrary to Judge Otero's own prior decision that common resolution was unsuitable.

Accordingly, as further explained below, Sempris's Motion should be denied.

## II.    FACTUAL BACKGROUND

### A.    Sempris and Co-Defendants Conspire to Defraud Consumers.

Defendant Sempris operates various online "Membership Programs" that purport to offer discounts and money saving deals to "subscribers." In reality, they are scams. Using the sale of a legitimate product as bait, Sempris (in conjunction with its co-defendants) acquires and uses consumers' billing and contact information to deceptively enroll and charge consumers recurring monthly fees. Under separate schemes with co-defendants Quality Resources, E. Mishan & Sons, Inc. ("Emson"), Digital River, Health Resources, and John Doe Defendants, Sempris uses deceptive post-transaction marketing techniques to trick consumers into enrolling, including:

- Contacting consumers by phone after they make online purchases under the guise of "confirming" the details of their orders and using a scripted marketing pitch to enroll consumers into programs,

- "Upselling" Sempris programs to consumers who call to make phone purchases,

- Bundling several different program offers during the same phone call so as to confuse consumers regarding the various terms and "benefits",

- Marketing to consumers who are completing online purchases and making it appear as if the membership offer is related to their purchase, and

- Sharing consumer contact and billing information with other parties to facilitate consumer marketing and billing purposes.

Although the tactics are similar, as explained below, the cases differ in meaningful ways.

### B.    The Pending Cases Involve Different Representations, Co-Defendants, and Methods of Enrollment.

Sempris currently faces four federal cases pending in courts across the country. Although the Pending Cases each challenge Sempris's fraudulent enrollment practices, they involve

different co-defendants, schemes, enrollment methods (internet vs. telephone etc.), scripts, and

programs. The cases and their respective class definitions include:

- ***Daniell v. Sempris* (N.D. Ill.)**: Plaintiff Bonnie Daniell was telephonically enrolled in Sempris's Budget Savers program by Defendant Quality Resources, who called her following her online purchase of Defendant Emson's Super Wave Oven. Daniell filed her class action complaint in the Circuit Court of Cook County on December 13, 2012, and her Second Amended Complaint on August 28, 2013 (which added Quality Resources as a defendant). Plaintiff was deposed on September 5, 2013. The case was removed to the Northern District of Illinois on September 26, 2013.

  ***Daniell* Class Definition**: All individuals in the United States from December 13, 2006 to the present who were telephonically enrolled by Quality Resources using the same script that was used to enroll Bonnie Daniel into Sempris's Budget Savers Membership Program following the individual's purchase of at least one Emson product from an Emson website.

- ***Herman v. Sempris* (W.D. Mich.)**: Plaintiff Eric Herman was telephonically enrolled in Sempris's Budget Savers program by Quality Resources, who called him following his online purchase of Emson's Chair Gym. Herman filed his class action complaint in the Western District of Michigan on January 7, 2013, and his First Amended Complaint on October 10, 2013. Plaintiff was deposed on August 23, 2013.

  ***Herman* Class Definition**: All individuals who were enrolled by Quality Resources in a Sempris Membership Program using the same script to enroll Eric Herman following their online purchase of at least one Emson product.[4]

- ***Kist v. Sempris* (D. Mass.)**: Plaintiff Marcella Kist was enrolled in Sempris's Value Plus program by Defendant Digital River after being directed to a post-transaction marketing website during her online purchase of computer software. Kist filed her Class Action Complaint on February 11, 2013, and her First Amended Complaint on April 17, 2013. Defendants moved to dismiss the case on May 15, 2013, and to stay the proceedings and discovery in late October and November 2013. All motions remain pending.

  ***Kist* Class Definition**: All individuals who were enrolled in and charged for any Sempris Membership Program following their online purchase, completed through Defendant Digital River, of a product from www.applexsoft.com.

- **<u>Maher v. Sempris (D. Minn.)</u>:** Plaintiff Carol Maher was enrolled in Sempris's Taste for Savings program by John Doe while completing her telephone purchase of Defendant

---

[4]     Although *Herman* and *Daniell* seem similar at first blush, the scripts used to enroll Plaintiffs were materially different and the classes do not overlap. Among other things, the two scripts contained different descriptions of the Budget Savers program, offered different incentives, and bundled a different number of programs together to confuse consumers.

Health Resources's Glucosulin product. Plaintiff filed her Class Action Complaint on August 14, 2013. On October 18th, Sempris moved to stay all proceedings. Hearing on the motion to stay is scheduled for December 16, 2013.

***Maher*** **Class Definition**: All individuals who were enrolled in a Sempris Membership Program following their telephone purchase through John Doe of a product from Health Resources using the materially same call script that John Doe used to enroll Plaintiff Maher.

### C.   The Parties Negotiate Protective Orders and a Cross-Use Agreement to Facilitate Discovery in *Daniell*, *Kist*, and *Herman*.

Discovery in the Pending Cases commenced in March 2013. Discovery requests were subsequently exchanged between all existing parties in *Daniell* and *Herman* between March and June of 2013. To facilitate production, the parties agreed to and negotiated a joint protective order for use in *Daniell* and *Herman*, which was entered in July and August of 2013, respectively. Plaintiff Kist likewise issued discovery requests to Sempris and Digital River on June 5, 2013. After being granted extensions of time to respond, Defendants provided their responses and objections in July and August 2013, but refused to produce any documents at that time—claiming that production would be forthcoming on a rolling basis once the parties finalized a protective order and protocol for the production of electronically stored information ("ESI"). In August 2013, the parties began negotiating a protective order and ESI protocol.[5]

In early May 2013, Plaintiffs' counsel and Sempris likewise negotiated and agreed to a cross-use agreement for use in *Kist*, *Daniell*, and *Herman*. (*See* Cross-Use Agreement Documents, attached as Group Exhibit A, pp. 1-11.) After exchanging final edits (*see id.* at pp. 12-18), both Plaintiffs and Sempris operated as though the cross-use agreement was in place,

---

[5]   After discussing various drafts of the protective order and conducting several telephonic meet and confers, the parties in *Kist* circulated a nearly final draft in late September. Rather than take steps to finalize the protocol, however, Defendants moved to stay proceedings pending the outcome of Sempris's MDL motion.

with Plaintiffs limiting their subsequent discovery requests to reduce duplication and Sempris

producing documents in *Herman*, *Daniell*, and *Kist* under a single cover (*see id.* at pp. 19-20.)[6]

## III.  ARGUMENT

In deciding whether to grant a request for centralization and transfer, the Panel considers

whether: (1) the actions involve one or more common questions of fact, (2) transfer would serve

the convenience of the parties and witnesses, and (3) transfer would promote the just and

efficient conduct of the litigation. 28 U.S.C.A. § 1407(a). "[W]here only a minimal number of

actions are involved, the moving party generally bears a heavier burden of demonstrating the

need for centralization." *In re Transocean Ltd. Sec. Litig. (No. II),* 753 F. Supp. 2d 1373, 1374

(J.P.M.L. 2010); *Manual for Complex Litigation*, Fourth § 20.131 (2004) ("those advocating

transfer bear a heavy burden of persuasion when there are only a few actions, particularly those

involving the same parties and counsel.") As explained below, Sempris fails to show that any of

these factors weigh in favor of centralization and transfer here.

### A.  The Pending Cases Do Not Share Common Questions of Complex Fact Necessary to Warrant Transfer.

Even where cases share common facts, transfer may still be denied where there is an

absence of sufficiently complex factual issues. *Multidistrict Litigation Manual* § 5:31 (2013); *see*

*In re: Nutella Mktg. & Sales Practices Litig.*, 804 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011)

(finding that although "the actions may share some factual questions regarding the common

defendant's marketing practices" the questions "[did] not appear complicated" and failed to show

---

[6]     Plaintiffs provided their final edits to Sempris on May 29, 2013. No further mention of the cross-use agreement (and or its validity) was made until September 10, 2013, during the parties' Rule 16 conference held before the *Herman* court. There, Sempris admitted that the parties had agreed to a cross-use agreement but changed course on whether it was in place, stating that finalization still "needs to happen." (S*ee Herman* Hearing Transcript, attached as Exhibit B, p. 18:16.)

that "any common factual questions are sufficiently complex or numerous to justify Section 1407 transfer"); *see also In re: Nissan N. Am., Inc., Infiniti FX Dashboard Prods. Liab. Litig.*, 715 F. Supp. 2d 1355, 1356 (J.P.M.L. 2010) ("While the actions do share some questions of fact [], the parties have not convinced us that those questions are sufficiently complex and/or numerous to justify Section 1407 transfer at this time."); *In re Royal Am. Indus., Inc. Sec. Litig.*, 407 F. Supp. 242, 243 (J.P.M.L. 1976) (explaining that movant carries a heavy burden to show that "common questions of fact are so complex and the accompanying discovery so time-consuming" as to overcome the inconvenience to the other parties and witnesses) (internal citations omitted.)

Here, Sempris fails to show that the Pending Cases share complex common questions of fact. Although Sempris is technically correct that each case generally concerns the sale of a consumer product, the passing of the consumer's information to another party, and the subsequent enrollment and charging of membership fees, such a description provides no explanation for how such questions are common between the cases. Sempris fails to acknowledge that the Pending Cases involve different co-defendants, schemes, representations, and methods of enrollment. Instead, Sempris provides a lengthy recitation of the various arguments and defenses it expects to raise in the litigation based on its conduct in previous unrelated cases, claiming, for instance, that the audiotapes of plaintiffs' sales calls will demonstrate that plaintiffs consented to enrollment and that all material terms were disclosed. (Def. Mot. 9-10.) Contrary to showing the existence of common facts, however, the audiotapes instead highlight differences between the scripts used to enroll plaintiffs in each case and the different ways in which each plaintiff was deceived.[7]

---

[7]     For instance, after reviewing the audiotape of plaintiff's sales call, the *Daniell* state court found the call was misleading specifically due to the operator's statement that the "30-day trial

Sempris also claims that its defenses against class certification—specifically those relating to overbreadth and lack of commonality that it previously asserted in the *Dioquino* matter—are common and "will apply across all four of the [Pending Cases]." (Def. Mot. 10.) Sempris doesn't explain, however, how its pursuit of such defenses would reveal the existence of common issues of fact between the Pending Cases, as again, any inquiry regarding whether class members were harmed or deceptively enrolled would require an examination of the script or website disclosures applicable to each case.[8]

Furthermore, Sempris's assertions that the Pending Cases "demand similar inquiries into the consumer transactions at issue" which will "show that all material disclosures were properly made and that no class can be certified," and that "[e]fficiencies will be gained by having a single judge conduct these analyses" do not show that the facts are common. (Def. Mot. 11.) This argument ignores the fact that every court that has reviewed Sempris's enrollment methods has found them to be deceptive and overlooks that the consumer transactions at issue were materially different. Again, the "disclosures" were made by different defendants (Quality Resources, Digital River, or John Doe), using different scripts across different mediums (telephone or internet), and the putative classes are separately defined. Thus, each case will require an analysis of the relationship between the defendants, the channels through which consumer information was passed, and the specific oral or written representations used to enroll consumers.

Even if Sempris could show that the cases share factual questions, they are hardly complex inquiries. Rather, as the Panel has found in the face of similar challenges to a business's

---

period [] doesn't start until you receive the package in the mail." (*See Daniell* Hearing Transcript, attached as Exhibit C, p. 46-48.) This statement is particular to the *Daniell* script.
[8]     Kist, for example, was enrolled after being exposed to written representations made on defendants' webpage. Thus, the inquiry into whether she was deceptively enrolled would be factually dissimilar from the investigation into the oral representations made in the other cases.

use of fraudulent methods to enroll consumers in monthly membership programs (which consisted of three actions pending in two districts), such factual questions pertaining to enrollment methods and disclosures implicate "relatively straightforward consumer misrepresentation claims." *See In re: Intelius, Inc., Post-Transaction Sales & Mktg. Litig.* 706 F. Supp. 2d 1374, 1375 (J.P.M.L. 2010). The same is true here. Plaintiffs have each filed lawsuits advancing straightforward misrepresentation claims based on Sempris's standardized scripts and webpages particular to each case. As the lawsuits don't present common facts of such complexity that consolidation is required, Sempris's motion fails the first factor of §1407.

**B.      Centralization is Convenient Only For Sempris.**

Even with the existence of common questions of fact, a "transfer will not be ordered unless the convenience of parties and witnesses is served." *In re Photocopy Paper*, 305 F. Supp. 60, 61 (J.P.M.L. 1969); *see also Multidistrict Litigation Manual* § 5:5 (2013) (observing that transfer requests are regularly denied where the transfer would benefit certain parties to the exclusion of other parties and witnesses); *In re Galveston, Texas Oil Well Platform Disaster*, 322 F. Supp. 1405, 1407 (J.P.M.L. 1971) (finding that convenience to defendants fails to outweigh the inconvenience to plaintiffs caused by transfer and denying request).

Sempris offers little support for its conclusion that consolidation "will improve the convenience of the majority of the parties" by preventing counsel and witnesses from having to travel "around the country" (Def. Mot. 11-12), especially as its requested forum is the Central District of California. Not a single case is pending in California—the next closest case is nearly 2,000 miles away.[9] None of the Plaintiffs reside in California (each of them, except for Plaintiff

---

[9]      The Panel further considers the opposition of parties as indicative of whether transfer would be inconvenient. *See In re CVS Caremark Corp. Wage & Hour Employment Practices Litig.*, 684 F. Supp. 2d 1377, 1379 (J.P.M.L. 2010) (finding the fact that "[a] clear majority of

Maher, resides in the districts in which they've filed their respective lawsuits). Likewise, Digital

River is headquartered in Minnesota and its counsel is in Massachusetts, Quality Resources is a

Florida corporation with Florida counsel, Emson is located in New York, and lead counsel for

Emson, Sempris, and Plaintiffs are all located in Illinois. With the exception of Health Resources

and one member of Digital River's counsel, no party or listed counsel is located in California.[10]

Sempris, which is headquartered in Minnesota, is the only party named in each of the Pending

Cases and alone benefits from a single forum—to the inconvenience of everyone else.

  In addition, transfer would impose undue burden on the court, as the Central District of

California is recognized as one of the busiest in the country. *See Multidistrict Litigation Manual*

§ 5:21 (2013) ("The Panel regularly considers docket conditions in determining whether transfer

is appropriate.") It is the district court with the third most civil cases filed in 2012. *See* U.S.

Courts, *Federal Judicial Caseload Statistics, Table C-3* (2012). Statistics provided by the JPML

likewise show that for the 108 cases transferred under 28 U.S.C. § 1407 into the Central District

of California in the 12 months preceding September 2013, 246 cases were transferred out—a net

loss of -138—further evidence that the district's resources are already stretched thin and unable

to accommodate more cases. *See* J.P.M.L., *Statistical Analysis of Multidistrict Litigation Fiscal*

*Year 2013: Summary of Multidistrict Litigation by Circuit and District [],* pp. 3-4 (2013).[11]

---

plaintiffs, as well as all defendants, oppose centralization" as consideration weighing against
centralization); *In re Schneider Nat. Carriers, Inc. Wage & Hour Employment Practices Litig.,*
763 F. Supp. 2d 1373 (J.P.M.L. 2011). In the present case, all Plaintiffs, as well as Defendant
Digital River, openly oppose centralization, while the other defendants have indicated they have
no objection to or take no position. Again, Sempris is the only party actively seeking
centralization. (Def. Mot. 3.)

[10] While it is true that counsel for both Sempris and Plaintiffs "have offices in or near Los
Angeles" (Def. Mot. 4), no lawyers from those offices are involved in any of the Pending Cases.

[11] The converse is true of Plaintiffs' proposed venue—the Northern District of Illinois (*see*
Section III.E *infra*)—where 546 cases were transferred in and only 99 out, showing a net gain of
+ 447 and an ability to accommodate an increased workload. *Id.*

Put simply, even if the cases did share common facts of sufficient complexity, Sempris's

request for transfer to the Central District of California is inconvenient for every party. *See In re*

*Concrete Pipe*, 302 F. Supp. 244, 254 (J.P.M.L. 1969) ("In some such cases, [] coordination and

consolidation may impair, not further, convenience, justice and efficiency" and "neither the

convenience of witnesses and parties nor the just and efficient conduct of actions are served, *ipso*

*facto*, by transfer just because there are common questions of fact in the civil actions involved.")

Accordingly, this factor weighs against transfer as well.

### C.   The Just and Efficient Conduct of This Litigation Would Not be Promoted by Transfer.

#### 1.   Again, the Pending Cases are factually and procedurally distinct.

Sempris's claim that transfer would promote efficiency because the Pending Cases could

be put onto similar discovery and briefing schedules (Def. Mot. 12) also falls apart. As explained

in Sections II.B and II.C, the Pending Cases are factually distinct from each other. Additionally,

*Herman*, *Daniell*, *Kist* have progressed further than *Maher*—motions to dismiss have been fully

briefed in *Kist* and *Daniell*, the Plaintiffs in *Daniell* and *Herman* have been deposed, discovery

requests and responses have been exchanged in those three cases, and document production has

already commenced. In contrast, Defendants have only recently appeared in *Maher*. Thus, it

would be inefficient to prevent discovery from proceeding expeditiously in *Herman*, *Kist*, and

*Daniell* by requiring that the cases wait for *Maher* to catch up.[12] *See In re Photocopy Paper*, 305

F. Supp. at 62 (because "discovery is proceeding with a minimum expenditure of judicial

---

[12]   Sempris's argument regarding "the possibility of scheduling conflicts among the matters" and hypothetical "case management challenges" is without support. (Def. Mot. 12.) The parties have successfully litigated three of the four cases over the past year without the need for coordinated briefing schedules. Further, as four attorneys have appeared on behalf of Sempris in the Pending Cases, it is unlikely that counsel would face insurmountable scheduling challenges.

energies," transfer would be "inconsistent with the goal of promoting the just and efficient conduct of these actions.")

### 2. There are only four Pending Cases, and cooperation between counsel is sufficient to reduce possibly duplicative discovery.

Sempris also asserts that centralization is necessary to reduce the inefficiencies of duplicative discovery. (Def. Mot. 12-13.) This argument similarly fails. The potential for duplicative discovery is reduced where, as here, the number of counsel involved is few and the number of actions limited. *See In Re: Adderall XR*, 2013 WL 4015749 at *1 (J.P.M.L. Aug. 6, 2013) ("The limited number of actions and parties in this litigation also reduces the potential for duplicative discovery."); *see also In re Air Crash Disaster Near Natchitoches Parish, Louisiana, on September 20, 1973*, 391 F. Supp. 765, 766 (J.P.M.L. 1975) ("Moreover, because the defendants are the same in these two actions and the plaintiffs have identical interests in processing the issue of liability, any possibility of duplicative discovery can easily be avoided through cooperative efforts among the parties.")

Sempris is correct that a modicum of Plaintiffs' discovery requests to date have sought similar information, but these have included requests seeking information about Sempris's business model and its policies and procedures more generally. The individual factual differences between the Pending Cases, as well as the involvement of Sempris's varying co-defendants, require separate discovery.[13] *See In re: Provident Sec. Litig.*, 715 F. Supp. 2d 1356, 1357 (J.P.M.L. 2010) (finding that as "none of the cases have completely common defendants" and "the conduct of the different broker-dealer defendants appears to be at the heart of this litigation", the "discovery of this conduct will tend to be individualized, and thus the risk of

---

[13] Sempris's claims of burden are further unjustified, for as it points out, it has *already* responded to Plaintiffs' requests in *Herman*, *Daniell*, and *Kist*, and any possible duplication in document production will be eliminated under the parties' cross-use agreement.

duplicative discovery less consequential.") Here, the conduct of Sempris's co-defendant marketing partners, including their methods of obtaining and transferring consumer information and the different marketing scripts or websites used, are central to Plaintiffs' claims and will necessarily entail discovery tailored to the facts of each lawsuit that is divorced from the others.[14]

Furthermore, the parties can adopt suitable alternatives to transfer to minimize the possibility of duplicative discovery. *See In re Trans Union LLC Fair Credit Reporting Act (FCRA) Litig.,* 923 F.Supp.2d 1374, 1375 (J.P.M.L. 2013) ("Notices of deposition can be filed in all related actions; the parties can stipulate that any discovery relevant to more than one action can be used in all those actions; or the involved courts may direct the parties to coordinate their pretrial activities.") Again, such alternatives are especially appropriate where, as here, there are only a handful of lawyers involved. *See Multidistrict Litigation Manual* § 5:52 (2013) (where parties in numerous cases are represented by the same counsel, "alternatives to transfer" are preferred.); *In Re: Adderall XR*, 2013 WL 4015749 at *1 (finding that "informal cooperation among the involved attorneys and coordination between the involved courts seems preferable to formal centralization" when litigation involved only a small number of law firms).[15]

And as explained above, the parties have already agreed to a cross-use agreement (though Sempris now pretends that it hasn't). (*See* Section II.C.) That the parties have already

---

[14]     Sempris's assertion that "several Sempris executives could be subject to multiple seven hour depositions in the various cases" is likewise without merit. (Def. Mot. 13.) Plaintiffs have already agreed to (and operated in accordance with) the cross-use agreement that they understood was in place and remain committed to ensuring that deposition testimony doesn't consume an unreasonable amount of time for any witness.

[15]     Sempris's reliance on *In re First Nat. Bank, Heavener, Okl. (First Mortg. Revenue Bonds) Sec. Litig.*, 451 F. Supp. 995 (J.P.M.L. 1978) is misplaced. The Panel in *First Nat. Bank* emphasized that transfer was appropriate—and voluntary coordination insufficient—because the cases were "brought on behalf of the same plaintiff class", "shared numerous complex questions of fact" and that "discovery on these complex factual questions will be time-consuming." *Id*. at 997. Such considerations are not present here.

coordinated discovery without court intervention (*see* Section II.C) shows that counsel is capable

of cooperation. *See In re Fleet Bank Credit Card Terms Litig.*, 206 F. Supp. 2d 1368, 1369

(J.P.M.L. 2002) ("At the oral argument on this matter, counsel represented that thus far the

parties have been successfully informally coordinating pretrial proceedings."); *In re:*

*Webloyalty.com, Inc., Mktg. & Sales Practices Litig.* ("*Webloyalty II*"), 768 F. Supp. 2d 1365,

1366 (J.P.M.L. 2011) (finding alternatives to transfer where "plaintiffs in these two actions

[have] represented that they were prepared to coordinate their efforts to avoid overlapping

proceedings.")[16] Thus, "the fact that discovery [had been] proceeding with a minimum

expenditure of judicial energies" shows that transfer is "inconsistent with the goal of promoting

the just and efficient conduct of [litigation]." *In re Photocopy Paper*, 305 F. Supp. at 62.

> **3.    There is no risk of conflicting class decisions in the Pending Cases—**
> **the classes in no way overlap with each other.**

Sempris next asserts that consolidation is necessary to alleviate the danger of inconsistent

rulings because the litigation supposedly "presents potentially overlapping class actions." (Def.

Mot. 15.) As explained in Section II.B, however, the risk of inconsistent class rulings is pure

fiction—the classes *do not overlap. See In Re: Adderall XR*, 2013 WL 4015749 at *1 (finding

that "[t]he putative statewide classes in these actions [] do not significantly overlap" as "[e]ach

of the plaintiffs avers claims based upon different state antitrust and consumer protection laws",

and "[t]hus, the potential for conflicting pretrial rulings, particularly as to class certification,

appears to be minimal."); *In re: Nissan,* 715 F. Supp. 2d at 1356; *In re: Tyson Foods, Inc., Meat*

*Processing Facilities Fair Labor Standards Act (FLSA) Litig.*, 581 F. Supp. 2d 1374, 1375

---

[16]     The Panel issued decisions in two identically captioned cases concerning
Webloyalty.com's marketing practices. *See* 474 F. Supp. 2d 1353 (J.P.M.L. 2007); 768 F. Supp.
2d 1365 (J.P.M.L. 2011). For clarification purposes, we term the cases "*Webloyalty I*" (2007)
and "*Webloyalty II*" (2011).

(J.P.M.L. 2008) ("the actions do not involve overlapping classes, and [] are at somewhat different procedural stages.")

Sempris asserts that there is potential for overlap because "the *Daniell* and *Herman* plaintiffs both seek certification of nationwide classes of individuals who were 'enrolled by Quality Resources' [] using the 'same script' following the Plaintiff's purchase of an Emson product." (Def. Mot. 16.) But this isn't true: though similar, the cases do not necessarily implicate the "same script", and as discovery will show, Plaintiff will be able to ascertain which consumers were subjected to the variations. [17] *See* Section II.B*,* n.4, Section III.A, n.7, *supra.* Furthermore, there is no question that the *Kist* and *Maher* classes run no risk of overlap. As such, there is no practical danger of inconsistent class rulings.[18]

### D.     The Panel Has Denied Centralization Under Similar Circumstances.

The Panel regularly denies transfer under similar factual circumstances. In *In re: Trilegiant Membership Program Mktg. & Sales Practices Litig.*, the Panel found that "[a]lthough all actions contain allegations of the same basic scheme concerning post-transaction internet marketing and enrollment in membership programs, the differences among the actions will reduce any efficiencies to be gained from centralization." 828 F. Supp. 2d 1362, 1363 (J.P.M.L. 2011). As the Panel explained, the six cases involved different defendants and issues, various

---

[17]     Sempris's assertion that "Plaintiffs' counsel has acknowledged that the *Daniell* and *Herman* cases warrant consolidation" is also false. (Def. Mot. 16.) Plaintiffs' counsel merely acknowledged that *Herman* and *Daniell* likely shared some common issues as they concerned the same co-defendants. However, as explained in Section III.A, to the extent common issues actually are shown, they are not sufficiently complex so as to warrant consolidation.

[18]     Even if the Panel were to find that the *Herman* and *Daniell* classes potentially overlap (they don't), transfer is unnecessary where cooperation serves as a viable alternative. *See In re Royal Am. Indus.*, 407 F. Supp. at 244 ("Although the presence of competing requests for class designations has previously [] served to justify transfer, [] we are not similarly persuaded here. Instead, we believe that consultation and coordination between the two concerned courts coupled with cooperation of the parties will suffice.")

parties opposed centralization, and pretrial proceedings "[would] vary across the actions, including discovery targeted to the unique defendants in each action and issues, such as arbitration agreements, specific to those defendants." *Id.* (listing authorities); *see also Webloyalty II*, 768 F. Supp. 2d at 1366 (denying motion to transfer two pending cases and stating that "[v]iable alternatives to transfer can minimize the possibilities of duplicative discovery or inconsistent pretrial rulings"); *In re: Easysaver Rewards Mktg. & Sales Practices Litig.*, 716 F. Supp. 2d 1358 (J.P.M.L. 2010); *In re: Fresh Dairy Products Antitrust Litig.*, 856 F. Supp. 2d 1344, 1345 (Apr. 17, 2012) (acknowledging common factual issues but denying transfer because classes "do not appear to overlap", certain parties shared counsel, and "[g]iven the limited number of actions, [] informal cooperation among the involved attorneys is quite practicable.")

Here, as in *Trilegiant*, the Pending Cases contain material differences, such as varying co-defendants, membership programs, and methods of enrollment—necessitating the need for separate discovery in each case—and minimizing the efficiencies to be gained from possible centralization. Further, relatively few counsel are involved in the Pending Cases, as Plaintiffs, as well as Sempris, are both represented by the same counsel and firm in each case. As such, viable alternatives to transfer exist that can minimize any possibly duplicative discovery or inefficiencies. The Panel has held that transfer is not warranted under such circumstances.

Sempris's reliance on the Panel's decision in *In re: Webloyalty.com, Inc.* ("*Webloyalty I*") is misplaced. 474 F. Supp. 2d 1353 (J.P.M.L. 2007). Although the case is factually similar in that it concerned consumers who had been deceptively enrolled in monthly membership programs, the similarities end there. First, unlike the present case, all parties in *Webloyalty I* supported transfer of the cases to the District of Massachusetts. *Id.* at 1354. Second, the four consolidated actions contained overlapping classes and a factually identical method of

enrollment (all class members were enrolled online after clicking the same button to receive money back from their purchase). *See In Re: Webloyalty.com, Inc. Marketing and Sales Practice Litigation*, Case No. 1:07-md-01820 (D. Mass. Feb. 27. 2007), Dkt. 12-1. Accordingly, *Webloyalty I* is inapposite.[19]

E.      **In the Event the Panel Grants *Any* Transfer (It Should Not), the Northern District of Illinois Presents the Most Convenient Forum.**

To the extent the Panel decides that centralization and transfer to *some* jurisdiction is warranted (which it isn't), the Northern District of Illinois represents the most appropriate forum. In selecting the transferee district, the Panel considers: where the largest number of cases are pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges. *Manual for Complex Litigation* (4th) § 20.131. The Panel is traditionally reluctant to transfer the cases to a forum where none of the actions are pending. *See In re Ownership of Longoria Bank Deposits Litig.*, 431 F. Supp. 913, 916 (J.P.M.L. 1977); *see also Multidistrict Litigation Manual* § 6:8 (2013) ("The Panel has only rarely transferred cases to a district where no action was pending at the time of transfer.")

1.      **Sempris's selection of the Central District of California is self-serving.**

Ignoring that the Central District of California is overburdened and inconvenient for nearly all of the parties (*see* Section III.B, *supra*), Sempris nevertheless requests transfer before Judge Otero, as allegedly, he is "the only judge nationwide who has significant experience with the legal and factual issues presented by the [Pending Cases]." (Def. Mot. 19.) This isn't true.

---

[19]      *In re Vistaprint Corp. Mktg. and Sales Practices Litig.*, MDL No. 4:08-md-1994, 2009 WL 2884727 (S.D. Tex. Aug. 31, 2009) is similarly inapposite. The six consolidated cases each alleged that plaintiffs were enrolled in the same manner after purchasing business cards from defendant's webpages and viewing the same representations. *Id.* at *5.

Each of the courts presently presiding over a Pending Case features an experienced judge who is fully capable of deciding the claims. Furthermore, Sempris neglects to mention that the *Webloyalty I* litigation, which again involved similar deceptive membership programs, was transferred to the District of Massachusetts and presided over by Judge Tauro—the same judge who has overseen the *Kist* case for the past eight months.[20] Judge Tauro spent over two years managing the *Webloyalty I* litigation, during which time he ruled on various pre-trial matters and ultimately guided the parties to settlement. *See In Re: Webloyalty.com, Inc., Marketing and Sales Practices Litigation,* 1:07-md-01820 (D. Mass. Feb. 27, 2007).[21] Accordingly, if judicial experience was truly Sempris's concern, as it claims, it should have requested transfer to Judge Tauro and the District of Massachusetts (where *Kist* is pending).

Sempris's requested forum instead reveals its actual motive in requesting transfer—to bring the Pending Cases back before Judge Otero—who had previously denied class certification in the *Dioquino* case.[22] Such forum shopping is disfavored and represents an improper use of Section 1407 transfer. *See Multidistrict Litigation Manual* § 5:41 (2013) (describing the

---

[20]     Kist was reassigned to Judge Wolf on October 28, 2013, pursuant to Judge Tauro's taking of senior status. Senior status does not preclude a judge from presiding over an MDL.

[21]     The factual allegations of the *Webloyalty I* litigation are sufficiently similar to the Pending Cases so as to confer judicial experience and familiarity. *See Multidistrict Litigation Manual* § 6:14 (2013) ("The Panel has considered the experience gained in handling similar actions involving unrelated parties but similar factual schemes and theories of recovery."); *In re Flat Glass Antitrust Litigation (No. II)*, 559 F. Supp. 2d 1407 (J.P.M.L. 2008).

[22]     In accordance with Local Rule 23-3 (C.D. Cal.), Dioquino moved for class certification 90 days after filing her complaint—prior to the parties' initial case management conference and without the benefit of discovery into class issues. After denying the parties' joint request to continue certification deadlines to allow for full class discovery, Judge Otero denied certification on the grounds that individual inquiries would be needed due to the varying scripts presented to consumers across Sempris's programs and marketing partners, among other things. *See Dioquino*, Case No. 11-cv-05556 (C.D. Cal. April 9, 2012), Dkt. 70. Mindful of the *Dioquino* court's ruling, the Pending Cases thus specifically separate the litigation into clearly-defined classes where the enrollment method and representations are uniform within each class.

18

judiciary's "traditional opposition to tactics designed merely to permit forum or judge-shopping"); *In re CVS Caremark,* 684 F. Supp. 2d at 1379 ("[W]here a Section 1407 motion appears intended to further the interests of particular counsel more than those of the statute, we would certainly find less favor with it.")

As such, there is no basis for sending the litigation to Judge Otero.

> **2.      The Northern District of Illinois is centrally located and convenient.**

If the cases are to be transferred anywhere, the Northern District of Illinois (where *Daniell* is pending before Judge Gettleman) is the most appropriate forum for proceedings. First, although the *Daniell* case was recently removed to the court, it was the first-filed case and has progressed the furthest. *See In re Metoprolol Succinate Patent Litig.*, 329 F. Supp. 2d 1368, 1370 (J.P.M.L. 2004) (in determining transferee forum, "we note that [] the Missouri district is the location of the first-filed action and pretrial proceedings are already well under way[].")

Second, the Northern District of Illinois is the most convenient forum for all the parties because it is centrally located. Centrality matters when "[g]eographic dispersal of parties and potential witnesses [] result[s] in no district standing out as a logical transferee district." *Multidistrict Litigation Manual* § 6:7 (2013) (stating the Northern District of Illinois is a particularly likely transferee district if the Panel considers geographic centrality); *In re Library Editions of Children's Books*, 297 F. Supp. 385, 387 (J.P.M.L. 1968) (explaining "that although air travel renders both California and New York readily accessible, there is still something to be said for the convenience of a geographically central forum in coast-to-coast litigation" and

transferring cases to Illinois); *In re Gov't Auto Fleet Sales*, 328 F. Supp. 218, 220 (J.P.M.L. 1971) (same.) Lead counsel for Plaintiffs, Sempris, and Emson are all based in Chicago.[23]

Other factors, such as caseload, experience, and docket conditions also favor Illinois over California. *See Multidistrict Litigation Manual* § 7:8 (2013); *In re Air Crash Near Castellon, Spain on October 10, 2001*, 296 F. Supp. 2d 1372, 1373 (J.P.M.L. 2003) ("the judge to whom we are assigning this litigation has a relatively favorable caseload for accepting this assignment."); *In re: Apple iPhone 3G & 3GS MMS Mktg. & Sales Practices Litig.*, 657 F. Supp. 2d 1378, 1379 (J.P.M.L. 2009) (transfer permits "assignment to an experienced transferee judge who is not currently presiding over another multidistrict litigation docket.") Here, Judge Gettleman is an ideal candidate, as he has experience overseeing multi-district litigation[24] but currently has none on his docket, whereas Judge Otero is currently already overseeing another MDL.[25]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs Bonnie Daniell, Eric Herman, Marcella Kist, and Carol Maher respectfully request that Sempris's Motion for Transfer Pursuant to 28 U.S.C. § 1407 be denied, or in the alternative, that the Pending Cases be transferred before Judge Robert Gettleman of the Northern District of Illinois.

Dated: December 2, 2013                           Respectfully submitted,

                                                  /s/
                                                  Steven L. Woodrow
                                                  EDELSON LLC
                                                  350 N. LaSalle, Suite 1300
                                                  Chicago, Illinois 60654

---

[23]     The N.D. Illinois is approximately 179 miles from the W.D. Mich., 983 miles from the D. Mass., and 409 miles from the D. Minn. It is also centrally located in relation to Florida (Quality Resources), New York (Emson), and California (Health Resources).

[24]     *See In Re: Aftermarket Filters Antitrust Litigation*, Case No. 1:08-cv-04883, MDL 1957; *In Re: Trans Union Corp. Privacy Litigation*, Case No. 1:00-cv-4729, MDL 1350.

[25]     *See In re Korean Air Lines Co., Ltd.*, MDL-1891, 2:07-cv-05107 (C.D. Cal.).

Tel: (312) 589-6370
Fax: (312) 589-6378
swoodrow@edelson.com

*Counsel for Plaintiffs Bonnie Daniell, Eric*
*Herman, Marcella Kist, and Carol Maher*